IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AILENN D. ALBA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-01060 |
| | § | |
| CANOPY GROWTH USA, LLC, and | § | |
| EB TRANSACTION SUB II, LLC, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.
### INTRODUCTION

Ailenn D. Alba ("Plaintiff") files this Original Complaint against Canopy Growth USA, LLC and EB Transaction Sub II, LLC ("Defendants") and respectfully shows as follows.

### II.
### PARTIES

1. Plaintiff is an individual and a citizen of Tarrant County, Texas.

2. Defendant Canopy Growth USA, LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 35715 US Highway 60, Units D101-103, Evergreen, Colorado 80439. This Defendant may be served with process, including citation and a copy of this lawsuit, by serving its registered agent for service of process, Tina Webb, 35715 US Highway 60, Units D102, Evergreen, Colorado 80439.

3. Defendant EB Transaction SUB II, LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 35715 US Highway 60, Units D101-103, Evergreen, Colorado 80439. This Defendant may be served with

process, including citation and a copy of this lawsuit, by serving its registered agent for service of process, Tina Webb, 35715 US Highway 60, Units D102, Evergreen, Colorado 80439.

## III.
## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law.

## IV.
## VENUE

5. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), which provides that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought." 42 U.S.C. § 2000e-5(f)(3)

6. Employment discrimination actions asserting a violation of federal law based on race, color, and national origin implicate Title VII of the Civil Rights Act of 1964, which contains special venue provisions that "displace[] the general rules for venue." *Dabney v. A&R Logistics, Inc.*, Civ. A. No. 14-788-BAJ-RLB, 2015 WL 4210988, at *2 (M.D. La. July 10, 2015) (citing 42 U.S.C. § 2000e-5(f)(3); *In re Horseshoe Entm't*, 337 F.3d 429, 432-33 (5th Cir.

2003)); accord *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) (per curiam) ("The venue provisions of § 2000e-5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and ... the more general provisions of [28 U.S.C.] § 1391 are not controlling in such cases." (cited in *Allen v. U.S. Dep't of Homeland Sec.*, 514 F. App'x 421, 422 n.3 (5th Cir. 2013) (per curiam))).

## V.
## BACKGROUND FACTS

7. Plaintiff was born in Colombia and is Hispanic/Latina. Spanish is Plaintiff's first language, but she speaks English with an accent. Plaintiff was constantly mocked and criticized for her accent and English skills, and Plaintiff was not the only Hispanic/Latino employee that was mocked because of race and national origin.

8. Plaintiff worked for Defendants from on or about December 18, 2019 until she was wrongfully terminated on or about February 8, 2021. Plaintiff was hired as a contract employee for the position of Events Manager on December 18, 2019 and was brought on as a permanent employee on January 13, 2020. The entire time Plaintiff worked for Defendants, she worked remotely from home. In July 2020, the company restructured, and Plaintiff's title was changed to Events & Trade Shows Manager. Plaintiff also supported the Trade Marketing and Sales Departments during her employment with Defendants.

9. In May 2020, prior to the restructure, Plaintiff began having problems with her supervisor Paul Frank (White/South African), who is Director, Shopper & Trade Marketing. Mr. Frank would constantly belittle and mock Plaintiff because of her accent and pretended to not understand what she was saying when she did not pronounce a word perfectly. Mr. Frank would repeat everything Plaintiff said after she said it. Mr. Frank would also interrupt Plaintiff in their

one-on-one meetings to tell her to work on her grammar. Mr. Frank removed Plaintiff from meetings and refused to allow her to work with other departments.

10. Mr. Frank had a different standard for Plaintiff than the other managers and team members, which were White and/or non-Hispanic. Mr. Frank would blame Plaintiff for the poor performance of White and/or non-Hispanic workers and praise White and/or non-Hispanic workers for Plaintiff's good performance. When he criticized Plaintiff, he focused on her English, commenting on her accent and vocabulary instead of her skills or performance.

11. Mr. Frank began giving Plaintiff assignments outside of her role, which had previously been assigned to other departments or team members. Although Plaintiff had occasionally performed additional assignments for these other departments, Mr. Frank assigned Plaintiff the tasks on a full time basis and would then become upset that these assignments took time away from her core role and position. Plaintiff asked Mr. Frank and HR for guidance, a scorecard, and/or coaching several times, but her requests were never met. Instead, Mr. Frank prohibited Plaintiff from asking any questions or making any comments during meetings. Mr. Frank removed Plaintiff from meetings and refused to allow her to work with other department directors or ask for clarification if she was unclear or considered needing clarification.

12. Even though Plaintiff sought guidance from HR, instead of addressing Mr. Frank's discriminatory and harassing behavior, HR seemed focused on "fixing" Plaintiff. HR offered English lessons to Plaintiff even though Plaintiff is fully fluent in English and has been for many years. While Defendants will claim that Plaintiff never accepted this "help" from HR, Plaintiff did attempt to take the English class, but there were IT issues with Defendants' online English class offered by Defendants. However, Plaintiff was able to hear the online lessons. At the end of the day, the real issue was not Plaintiff's English skills, since Plaintiff's English

language skills were not lacking or causing Mr. Frank to mock her accent. Further, Defendants' offer of basic English lessons to a fully fluent English speaker is further evidence of the insulting and discriminatory behavior tolerated and perpetuated at Defendants' management level.

13. In June 2020, Plaintiff advised Chrissy McHardy, Senior Director of HR, that she suffers from multiple mental health issues including Premenstrual Dysphoric Disorder (PMDD).

14. For example, on June 11, 2020, Plaintiff emailed Ms. Sol Clahane, VP and U.S. General Manager, asking for guidance on her role and job duties because Mr. Frank was not allowing Plaintiff to work within her job role. Then, on June 15, 2020, Plaintiff had a phone call with Laura Vincent, HR Business Partner, to discuss what tools HR had to better work with Mr. Frank. On June 18, 2020, Plaintiff went to HR and spoke with Chrissy to discuss the discrimination, the additional duties and responsibilities that Mr. Frank was assigning her, and the fact that she was not getting support from Defendants or Mr. Frank. Instead of investigating her complaints, HR shifted the responsibility to Plaintiff to determine what the solution should be. Defendants never made any investigation or resolution into Plaintiff's complaints about Mr. Frank.

15. A month later, in a meeting with other employees, Mr. Frank started berating Plaintiff for asking questions. Mr. Frank's boss, Sol Clahane, witnessed his behavior. Ms. Clahane texted Plaintiff after the meeting and let her know that she now understood Plaintiff's complaints. Mr. Frank's behavior improved for about two weeks, but by September, he had reverted to his same discriminatory behavior.

16. In September 2020, Plaintiff began having issues with another employee, Ms. Burnae Hanser, Director of Sales. Mr. Frank and Ms. Hanser are close friends and worked together previously.

17. On October 14, 2020, HR held two diversity focus groups. During these focus groups, Plaintiff raised her concerns about situations where coworkers and management were disrespectful. Plaintiff expressed complaints about the derogatory comments made to her because of her accent. Plaintiff also complained about how the female employees were ignored or undermined by the rest of the team members. Plaintiff disclosed her disabilities to Mr. Frank, as was recommended during the meeting.

18. In October 2020, Plaintiff began having suicidal thoughts because of Mr. Frank and work, among other things. Plaintiff sought in-patient treatment for multiple mental health issues including PMDD. Plaintiff advised Mr. Frank and HR of what happened and asked for help. Plaintiff provided paperwork regarding the PMDD crisis to HR on October 22, 2020. Plaintiff advised HR of the mistreatment and presented a request from her doctor for mental health and therapy accommodations on October 22, 2020. Plaintiff's physician wanted her to stay for in-patient treatment, but because she was scared to lose her job if she was admitted for in-patient treatment, her physician placed restrictions on her work instead. The restrictions required that Plaintiff only work 8-9 hours a day and two days off a month for mental health treatment. Mr. Frank became upset that, due to her accommodation, Plaintiff could no longer work the same 12-hour days she had previously been working. Plaintiff requested FMLA leave to accommodate her disabilities, but Defendants denied her request.

19. After Plaintiff presented HR with her accommodation request, in a telephone conference on October 22, 2020, Defendants told Plaintiff they were unsure how to accommodate Plaintiff's request for two days off per month because they was unsure whether to provide the leave as FMLA leave or short-term disability (STD) leave. Plaintiff then followed up the phone conference from that day with an email with all the necessary information to make the

decision for the accommodation request. However, Defendants refused to accommodate Plaintiff.

20. On November 11, 2020, Plaintiff contacted HR to ask if her leave would be FMLA or STD. On November 20, 2020, Plaintiff followed up with Ms. Vincent in HR to find out if Defendants had decided to process the claim as FMLA or STD. HR advised her that the STD provider had all the necessary information and was processing everything. However, HR questioned Plaintiff over why she wanted Defendants to pay for her disability leave in the first place instead of Plaintiff simply using her own vacation time for the disability leave. Furthermore, Defendants did not provide the required documents to the STD provider, and Plaintiff was forced to provide the documents herself in December 2020.

21. Plaintiff's accommodations were denied in December 2020, and in January 2021, Plaintiff discovered that her STD leave was also denied. Plaintiff was informed by the STD provider that Defendants' own policy prohibited her from qualifying from STD because Plaintiff was required to be off work for two full weeks before applying for STD. However, Defendants refused to provide Plaintiff with this information. Plaintiff was reluctant to take the time off that she needed because she was concerned that she would lose her job. Plaintiff against requested intermittent FMLA leave for mental health treatment, but Defendants again denied her request.

22. In December 2020, Ms. Hanser told Plaintiff that there would be no further budget for any events for her position and that her position may be eliminated. Mr. Frank told Plaintiff that her position was uncertain and forced her to work more hours than she was allowed under her accommodations, in order to ensure that her position was safe and would be included in the 2021 budget.

23. In early January 2021, Defendants still denied Plaintiff the requested accommodations. On January 4, 2021, Plaintiff spoke with Ms. Vincent about the status of her FMLA or STD leave. Ms. Vincent told Plaintiff that she needed to communicate with SunLife regarding her STD claim. Plaintiff asked why she could not use FMLA since her anniversary was quickly approaching. Ms. Vincent questioned Plaintiff about why she did not use her vacation time instead of disability time. Plaintiff also followed up on the status of her standing desk accommodation request. Ms. Vincent told her to speak with Ms. Ella Rodman, Manager of Office Services, who ended up getting it approved that day. On January 25, 2021, Plaintiff found that Defendants had a job posting for a Trade Marketing Manager, which was essentially Plaintiff's position and what Plaintiff has expertise on. Plaintiff attempted to talk to Mr. Frank, but he declined her meeting requests. She then asked Ms. Clahane about the job posting. The position was advertised for almost $30,000 more than what Defendants paid Plaintiff. Plaintiff approached HR about the job posting. HR claimed that it was a new position created because the team needed more employees. HR claimed this was a different role than Plaintiff's role with additional requirements that she allegedly did not meet. However, Plaintiff was already performing this role at the time that this "new position" was posted.

24. Mr. Frank engaged in discriminatory conversations with Ms. Hanser concerning another Hispanic/Latino employee over his English skills, and the fact that English was his second language. The week before Plaintiff's termination, Ms. Hanser called Plaintiff, complaining about the English skills of another Hispanic employee, Carlos Galeano. Ms. Hanser complained asking, "Why can't we hire someone who really understands English or can read English?" Plaintiff told Ms. Hanser that she was being racist and asked her who else she speaks about in this way. Ms. Hanser told Plaintiff that she and Mr. Frank talk about hiring employees

who speak and understand English. While Ms. Hanser was Mr. Galeano's supervisor, and not Mr. Frank, Mr. Frank was Ms. Hanser's subordinate and they worked together for a previous employer. Mr. Frank and Ms. Hanser have an extensive history and friendship.

25. Plaintiff approached Mr. Frank's boss, Sol Clahane, but Ms. Clahane told Plaintiff to raise her concerns with Mr. Frank. Plaintiff was verbally told that her job was being eliminated, but her termination paperwork says she was terminated for failure to perform. However, Plaintiff was never given a performance review to discuss any performance issues.

26. Near the of Plaintiff's employment, Mr. Frank finally responded to Plaintiff's complaints of how she was treated by other employees and he attempted to de-escalate the issue. At this time, and in December 2020 and January 2021, Plaintiff was working the same 12-hour shifts to complete the tasks and assignments required from Mr. Frank, because Mr. Frank and Defendants refused to accommodate Plaintiff's disability or grant her requests for accommodations.

27. Two weeks later, on February 8, 2021, Plaintiff's employment was terminated. A few weeks after Plaintiff's termination, Defendants terminated another Hispanic/Latino employee, Carlos Galeano.

## VI.
## CONDITIONS PRECEDENT

28. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and this Charge was dual filed with the Texas Workforce Commission.

29. The Charge was filed within 180 days after Plaintiff was terminated.

30. The EEOC issued Plaintiff a right to sue letter on March 10, 2022.

31. More than 180 days have passed since the charge was filed and the TWC has not issued Plaintiff a right to sue letter.

32. Plaintiff has timely exhausted all of her administrative remedies.

## VII.
## CAUSES OF ACTION

**A.  Cause of Action—Disability Discrimination—Failure to Accommodate—ADA**

33. Plaintiff incorporates each of the foregoing paragraphs.

34. Plaintiff requested a reasonable medical accommodation.

35. Defendants refused to provide Plaintiff with a reasonable medical accommodation.

36. Defendants discriminated against Plaintiff because of her disability and/or perceived disability and/or record of a disability and/or because they regarded her as disabled. Defendants' actions violated 42 U.S.C. § 12112.

**B.  Cause of Action—Discrimination—ADA**

37. Plaintiff incorporates each of the foregoing paragraphs.

38. Defendants discriminated against Plaintiff because of her disability and/or perceived disability and/or record of a disability and/or because they regarded her as disabled.

39. Defendants' actions violated 42 U.S.C. § 12112.

**C.  Cause of Action—Wrongful Termination—Discrimination—ADA**

40. Plaintiff incorporates each of the foregoing paragraphs.

41. Defendants terminated Plaintiff's employment because of her disability and/or perceived disability and/or record of a disability and/or because they regarded her as disabled.

42. Defendants' actions violated 42 U.S.C. § 12112.

**D.**    **Cause of Action—Discrimination—Title VII**

    43.    Plaintiff incorporates each of the foregoing paragraphs.

    44.    Defendants discriminated against Plaintiff because of her race.

    45.    Defendants' actions violated 42 U.S.C. § 2000e-2(a).

**E.**    **Cause of Action—Wrongful Termination—Discrimination—Title VII**

    46.    Plaintiff incorporates each of the foregoing paragraphs.

    47.    Defendants terminated Plaintiff's employment because of her race.

    48.    Defendants' actions violated 42 U.S.C. § 2000e-2(a).

**F.**    **Cause of Action—Discrimination—Title VII**

    49.    Plaintiff incorporates each of the foregoing paragraphs.

    50.    Defendants discriminated against Plaintiff because of her national origin.

    51.    Defendants' actions violated 42 U.S.C. § 2000e-2(a).

**G.**    **Cause of Action—Wrongful Termination—Discrimination—Title VII**

    52.    Plaintiff incorporates each of the foregoing paragraphs.

    53.    Defendants terminated Plaintiff's employment because of her national origin.

    54.    Defendants' actions violated 42 U.S.C. § 2000e-2(a).

**H.**    **Cause of Action—Unlawful Retaliation—ADA**

    55.    Plaintiff incorporates each of the foregoing paragraphs.

    56.    Plaintiff engaged in protected activity as set forth in 42 U.S.C. § 12203.

    57.    In response, Defendants retaliated against Plaintiff and ultimately terminated her employment.

    58.    Defendants' actions violated 42 U.S.C. § 12203.

**I.**    **Cause of Action—Unlawful Retaliation—Title VII**

    59.    Plaintiff incorporates each of the foregoing paragraphs.

60. Plaintiff engaged in protected activity as set forth in 42 U.S.C. § 2000e-3(a).

61. In response, Defendants retaliated against Plaintiff and ultimately terminated her employment.

62. Defendants' actions violated 42 U.S.C. § 2000e-3(a).

**J.  Cause of Action—FMLA Interference**

63. Plaintiff incorporates each of the foregoing paragraphs.

64. Defendants denied Plaintiff leave that should have been covered by the Family and Medical Leave Act.

65. Defendants' actions violated 29 U.S.C. § 2615.

**K.  Cause of Action—FMLA Discrimination**

66. Plaintiff incorporates each of the foregoing paragraphs.

67. Defendants terminated Plaintiff's employment while she was on leave that should have been covered by the Family and Medical Leave Act.

68. Defendants' actions violated 29 U.S.C. § 2615.

**L.  Cause of Action—Disability Discrimination—Failure to Engage in Required Interactive Process—TCHRA[1]**

69. Plaintiff incorporates each of the foregoing paragraphs.

70. Plaintiff informed Defendants of her disability and need for reasonable medical accommodation.

71. Defendants refused to engage in the required interactive process with Plaintiff concerning her request for a reasonable medical accommodation.

72. Defendants' actions violated section 21.051 of the Texas Labor Code.

---

[1] Texas Commission on Human Rights Act.

**M.     Cause of Action—Disability Discrimination—Failure to Accommodate—TCHRA**

73.     Plaintiff incorporates each of the foregoing paragraphs.

74.     Plaintiff requested a reasonable medical accommodation.

75.     Defendants refused to provide Plaintiff with a reasonable medical accommodation.

76.     Defendants' actions violated section 21.051 of the Texas Labor Code.

**N.     Cause of Action—Disability Discrimination—TCHRA[2]**

77.     Plaintiff incorporates each of the foregoing paragraphs.

78.     Defendants discriminated against Plaintiff because of her disability and/or perceived disability and/or record of a disability and/or because they regarded her as disabled.

79.     Defendants' actions violated section 21.051 of the Texas Labor Code.

**O.     Cause of Action—Wrongful Termination—Disability Discrimination—TCHRA**

80.     Plaintiff incorporates each of the foregoing paragraphs.

81.     Defendants terminated Plaintiff's employment because of her disability and/or perceived disability and/or record of a disability and/or because they regarded her as disabled.

82.     Defendants' actions violated section 21.051 of the Texas Labor Code.

**P.     Cause of Action—Discrimination—TCHRA**

83.     Plaintiff incorporates each of the foregoing paragraphs.

84.     Defendants discriminated against Plaintiff because of her race.

85.     Defendants' actions violated section 21.051 of the Texas Labor Code.

**Q.     Cause of Action—Wrongful Termination—Discrimination—TCHRA**

86.     Plaintiff incorporates each of the foregoing paragraphs.

87.     Defendants terminated Plaintiff's employment because of her race.

---

[2] Texas Commission on Human Rights Act.

    88.    Defendants' actions violated section 21.051 of the Texas Labor Code.

**R.**    **Cause of Action—Discrimination—TCHRA**

    89.    Plaintiff incorporates each of the foregoing paragraphs.

    90.    Defendants discriminated against Plaintiff because of her national origin.

    91.    Defendants' actions violated section 21.051 of the Texas Labor Code.

**S.**    **Cause of Action—Wrongful Termination—Discrimination—TCHRA**

    92.    Plaintiff incorporates each of the foregoing paragraphs.

    93.    Defendants terminated Plaintiff's employment because of her national origin.

    94.    Defendants' actions violated section 21.051 of the Texas Labor Code.

**T.**    **Cause of Action—Unlawful Retaliation—TCHRA**

    95.    Plaintiff incorporates each of the foregoing paragraphs.

    96.    Plaintiff engaged in protected activity as set forth in Texas Labor Code section 21.055.

    97.    In response, Defendants retaliated against Plaintiff and ultimately terminated her employment.

    98.    Defendants' actions violated section 21.055 of the Texas Labor Code.

## VIII.
## DAMAGES

    99.    Plaintiff incorporates each of the foregoing paragraphs.

    100.    Defendants' actions violated 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a) and 42 U.S.C. § 12112 and 42 U.S.C. § 12203, which entitles Plaintiff to recover from Defendants back pay, front pay, as well as pre-judgment and post-judgment interest.

    101.    Plaintiff is also entitled to recover from Defendants compensatory damages as provided for under 42 U.S.C. § 1981a(a)(1).

102. Because Defendants' actions were done with malice and/or reckless indifference to Plaintiff's federally-protected rights, Plaintiff is entitled to recover from Defendants punitive damages as provided for under 42 U.S.C. § 1981a(a)(1) and (b)(1).

103. Defendants' actions violated 29 U.S.C. § 2615, which, pursuant to 29 U.S.C. § 2617, entitles Plaintiff to recover from Defendants any wages, salary, employment benefits, or other compensation denied or lost.

104. Plaintiff is entitled to recover liquidated damages from Defendants equal to the amount awarded to Plaintiff as wages, salary, employment benefits, or other compensation denied or lost, pursuant to 29 U.S.C. § 2617(a)(1)(iii).

105. Plaintiff seeks all damages available to her under federal law.

106. Defendants' actions also violated the Texas Commission on Human Rights Act, which entitles Plaintiff to recover from Defendants back pay, front pay, compensatory damages, as well as pre-judgment and post-judgment interest.

107. Because Defendants' actions were done with malice and/or reckless indifference to Plaintiff's state-protected rights, Plaintiff is entitled to recover from Defendants punitive damages.

108. Plaintiff seeks all damages available to her under the TCHRA.

## IX.
## ATTORNEYS' FEES AND COSTS

109. Plaintiff incorporates each of the foregoing paragraphs.

110. Plaintiff retained the services of undersigned counsel to prosecute her claims.

111. Pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 12205, Plaintiff is entitled to recover a reasonable attorneys' fee from Defendants, including reasonable expert fees and costs.

112. Pursuant to Texas Labor Code section 21.259, Plaintiff is entitled to recover a reasonable attorneys' fee from Defendants, including reasonable expert fees.

## X.
## INJUNCTIVE AND DECLARATORY RELIEF

113. Plaintiff incorporates each of the foregoing paragraphs.

114. Plaintiff requests the Court enter an order providing injunctive and declaratory relief including, but not limited to:

    a. Prohibiting Defendants from engaging in unlawful discrimination;

    b. Reinstating Plaintiff's employment with Defendants with backpay;

    c. Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

    d. Paying court costs;

    e. A declaration that Defendants violated Plaintiff's rights under state and federal law, engaged in unlawful employment discrimination, and considered an illegal factor in terminating Plaintiff's employment; and

    f. Any additional equitable relief the Court deems proper.

## XI.
## ALTER EGO/JOINT ENTERPRISE

115. Plaintiff incorporates each of the foregoing paragraphs.

116. Defendants formed multiple companies and entities.

117. Defendants are owned and/or operated together.

118. Defendants are the alter egos of each other.

119. Defendants integrated their resources to achieve a common business purpose.

120. Plaintiff's injuries arose out of that common business.

121. The separate corporate entities or partnerships must be disregarded and they must be treated as one entity to prevent the corporate fiction as an unfair device to inflict injustice on Plaintiff.

122. Defendants are therefore jointly and severally liable to Plaintiff for her damages.

## XII.
## JOINT AND SEVERAL LIABILITY

123. Plaintiff incorporates each of the foregoing paragraphs.

124. Defendants act as agents for each other.

125. Defendants are therefore jointly and severally liable for Plaintiff's injuries and damages.

## XIII.
## RESPONDEAT SUPERIOR

126. Plaintiff incorporates each of the foregoing paragraphs.

127. Defendants are liable for the acts and/or omissions of their respective agents, representatives, employees, servants, and officers.

## XIV.
## JURY DEMAND

128. Plaintiff demands a trial by jury.

## XV.
## CONCLUSION AND PRAYER

129. Plaintiff respectfully requests that Defendants be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment awarding Plaintiff:

    A. Back pay and front pay (including benefits);

    B. Compensatory damages;

    C. Punitive damages;

    D.    Injunctive and declaratory relief, including but not limited to, an Order:

        a.    Prohibiting Defendants from engaging in unlawful discrimination;

        b.    Reinstating Plaintiff's employment with Defendants with backpay;

        c.    Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

        d.    Paying court costs;

        e.    A declaration that Defendants violated Plaintiff's rights under state and federal law, engaged in unlawful employment discrimination, and considered an illegal factor in terminating Plaintiff's employment; and

        f.    Any additional equitable relief the Court deems proper;

    E.    Court costs;

    F.    Pre-judgment and post-judgment interest at the rate set by law; and

    G.    All legal or equitable relief this Court deems proper.

Respectfully submitted,

*/s/ Jamie J. Gilmore*
Jamie J. Gilmore
Texas Bar No. 24045262
jgilmore@galyen.com
Brittney L. Thompson
Texas Bar No. 24104618
bthompson@galyen.com
**BAILEY & GALYEN**
2777 N. Stemmons Fwy, Suite 1150
Dallas, TX 75207
Telephone: 214-252-9099
Facsimile: 214-520-9941

**ATTORNEYS FOR PLAINTIFF**